# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RESTORATIVE CARE
OF AMERICA, INC.,

      Plaintiff,

v.                                                     Case No. 8:22-cv-1404-KKM-AEP

DEAN JOSLOFF,

      Defendant.

_____

## ORDER

Restorative Care of America, Inc., (RCAI), a Florida-based company that manufactures and sells orthopedic devices, sues its former president, Dean Josloff, for violations of the Defend Trade Secrets Act (DTSA) and the Florida Uniform Trade Secrets Act (FUTSA) along with six counts for various state law torts. Am. Compl. (Doc. 18). Josloff brings counterclaims against RCAI alleging defamation, religious discrimination under the Florida Civil Rights Act (FCRA) and the New Jersey Law Against Discrimination (NJLAD), fraud, and negligent misrepresentation. Am. Counterclaim (Doc. 67). RCAI moves for summary judgment on its claims and on Josloff's counterclaims. MSJ (Doc. 144). Josloff responded, Resp. (Doc. 169), and RCAI replied, Reply (Doc. 172). For the reasons below, I grant in part and deny in part the motion.

## I.    BACKGROUND

RCAI manufactures and sells orthopedic and rehabilitative products. MSJ at 1; *accord* Resp. at 2. After working at RCAI for many years, RCAI promoted Josloff to National Sales Manager in 2017. MSJ at 1. After the company's president retired in 2019, RCAI's Chairman and sole shareholder, Mark Turnbull, promoted Josloff to the position of Executive Vice President. Turnbull Decl. (Doc. 144-1) ¶¶ 4, 11–12. In this position, Josloff was the highest-ranking employee at RCAI. MSJ at 2. On October 4, 2021, Turnbull appointed Josloff as President. Turnbull Decl. ¶ 10.

The events giving rise to this litigation occurred over the course of Josloff's tenure as President and Executive Vice President. Four days after promoting Josloff to President, Turnbull asserts that he discovered that Josloff directed RCAI's controller, Heidi Rodriguez, to pay him "unauthorized commissions, bonuses, and salary increases," which Turnbull asserts was in "direct contravention" of Board directives. MSJ at 5, 20; *see* Turnbull Decl. ¶¶ 13–32. This was "unauthorized," according to Turnbull, because Turnbull was the "sole individual with authority" to alter compensation, and he had made that "clear" to Josloff. *Id.* ¶¶ 10, 12–13. Josloff disputes the characterization as "unauthorized" because RCAI's controller approved them, and Josloff states that Turnbull was aware of his compensation. Resp. at 4–5. Believing Josloff's actions to be unauthorized, Turnbull admonished him and ordered Josloff to cease giving himself compensation

increases. Turnbull Decl. ¶ 15. RCAI states that during this meeting, Josloff asked to raise his salary and Turnbull refused. *Id.* ¶ 21. Turnbull told Josloff that he would develop a new compensation package to be finalized after RCAI's performance was assessed at the end of the first quarter of 2022, *id.*, but Turnbull discovered that soon thereafter Josloff again directed the controller to raise his salary without Turnbull's approval, *id.* ¶ 22. According to RCAI, throughout Josloff's tenure as President, Josloff continued to direct RCAI's controller to award him compensation increases. *Id.* ¶¶ 22–23.

From 2020 to 2022, Josloff also allegedly engaged in other financial improprieties, including taking unauthorized car and phone allowances, using company funds for personal purchases, and hiring his wife as a salaried employee without director permission. *Id.* ¶¶ 24–32. Turnbull learned from the controller that Josloff had directed the controller to approve his wife with company health insurance. *Id.* ¶ 38. When the RCAI Treasurer, RCAI Secretary, and Turnbull confronted Josloff in April 2022, Josloff protested that his wife was a "temporary, part-time" employee and that she did not receive benefits. *Id.* ¶ 38. To hire his wife at RCAI, Josloff directed the controller to add her to payroll under her maiden name. *Id.* ¶¶ 27, 38. Josloff does not dispute this fact but asserts that he had "full authority" and "would have no reason to conceal his wife's name when she had been using it all along." Resp. at 6–7. Josloff maintains that the "personal purchases" he made were for company purposes only, that the car he used was "shared," and that it was within Josloff's

3

authority to alter cell phone allowances. *Id.* at 5. The personal charges to company credit cards, according to RCAI, included personal medical expenses, "personal and recreational travel, gifts, flowers, and baked goods for family members." Turnbull Decl. ¶ 30.

After Turnbull rebuked Josloff for hiring his wife without authorization, on or about April 8, 2022, Josloff allegedly transferred confidential information from company emails and accounts to his personal email account, including vendor information, sales data, and more. Turnbull Decl. ¶¶ 40–44. Josloff responds that he sent himself the information while he was still employed and therefore "his actions were done through proper means for the purpose of doing his job." Resp. at 13. After meeting with RCAI employees to learn more about Josloff's actions, Turnbull terminated Josloff's employment on April 14, 2022, Turnbull Decl. ¶¶ 39, 44. After his termination, RCAI "also learned that [Josloff] had unilaterally, and without any legitimate business reason, ordered the destruction" of documents "to support RCAI's ISO 9001 Certification." MSJ at 5; *see* Turnbull Decl. ¶ 33. Josloff denies those allegations, arguing that those files were on the controller's computer, which he could not access. Resp. at 9. Because Josloff called the controller before his termination to report Turnbull for discrimination based on Turnbull calling him a "f...ing Jew" earlier in April 2022, *id.* at 7, Josloff maintains that he was terminated "for reporting religious discrimination," *id.* at 1.

4

## II.    LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). "[W]hen the question before the district court is purely a question of law," summary judgment may be appropriately granted. *Blanco v. Samuel*, 91 F.4th 1061, 1070 (11th Cir.

2024). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) (quoting *Anderson*, 477 U.S. at 252).

## III. ANALYSIS

### A. The Magistrate Judge's Sanctions Order Against Josloff

As a threshold matter, Josloff relies on previously undisclosed evidence in his response to RCAI's motion for summary judgment, directly contradicting the Magistrate Judge's Sanctions Order. (Doc. 171). Josloff has demonstrated a long pattern of willful and repeated noncompliance with discovery requirements in this case, ultimately culminating in an order that "prohibit[ed Josloff] from relying on any arguments, information, documents, or data not previously disclosed as discovery as of October 10, 2024." (Doc. 154) at 6; *see also* (Doc. 171) at 2.

RCAI points out that Josloff disobeyed those orders and relies on evidence in his response to the motion for summary judgment that he did not produce during discovery. Reply. at 1; *see* Cooperman Decl. (Doc. 172-1). Therefore, that evidence previously undisclosed by Josloff in his response is excluded from consideration in this Order.

### B. RCAI's Claims

### 1. Counts I & II: Misappropriation of Trade Secrets Under the FUTSA and DTSA

RCAI brings both DTSA (Count I) and FUTSA (Count II) claims against Josloff. The DTSA "largely mirrors" the FUTSA, and thus I discuss the claims concurrently. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n. 13 (11th Cir. 2020). To prove a claim under the DTSA and FUTSA, RCAI "must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (quoting *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017)). Under the FUTSA or DTSA, a trade secret must "[d]erive[] independent economic value. . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 688.002(4), Fla. Stat.; 18 U.S.C. § 1839(3) (similarly defining trade secret).

Entering into written confidentiality agreements, restricting access to the trade secrets, and requiring the destruction of any copies of confidential materials are examples of reasonable measures to protect trade secrets. *Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 809 n.1 (Fla. 3rd DCA 2014). "When there is no express agreement, the party seeking protection must establish the existence of a 'confidential relationship giving

7

rise to an implied obligation not to use or disclose' a trade secret." *DePuy Synthes Prods.,
Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1372 (Fed. Cir. 2021)
(alterations adopted) (quoting *Dotolo v. Schouten*, 426 So. 2d 1013, 1015 (Fla. 2d DCA
1983)) (applying Florida law).

RCAI argues that Josloff violated the FUTSA and DTSA because he forwarded
hundreds of emails and other documents containing trade secrets to his personal email
account. The information included "client contact information, lists of potential clients,
RCAI pricing structure and agreements, RCAI distributor information and sales data,
RCAI business and marketing strategy, RCAI sales information, and tracing reports."
Turnbull Decl. ¶¶ 40–42. Because RCAI has not provided sufficient evidence showing
that the emails and documents constitute trade secrets, summary judgment is denied on
the DTSA and FUTSA claims.

As a threshold matter, RCAI has not shown that the alleged trade secrets "[d]erive[]
independent economic value" from being secret. § 688.002(4)(a), Fla. Stat. While it may
be true that RCAI had invested resources in developing the "information contained in the
documents" and the information is "highly valuable" to it, Turnbull Decl. ¶42, that does
not explain how the secrecy itself creates "independent economic value," such as giving
RCAI a competitive advantage in its industry. § 688.002(4), Fla. Stat.; *see Advantor Sys.*,
678 F. App'x at 854 (explaining that price quota could not be a trade secret because it has

8

economic value only when disclosed); *Compulife Software Inc.*, 959 F.3d at 1311

("[W]hether something is a trade secret is a question typically 'resolved by a fact finder after

full presentation of evidence from each side.' " (quoting *Yellowfin Yachts*, 898 F.3d at

1298–99)). Therefore, summary judgment is due to be denied on RCAI's DTSA and

FUTSA claims.

### 2.  Count III: Conversion

"The elements of conversion [in Florida] are: 1) a taking of chattels; 2) with intent

to exercise ownership over them an ownership inconsistent with the real owner's right of

possession." *Hannah v. Malk Holdings, LLC*, 368 So. 3d 1087, 1091 (Fla. 6th DCA

2023). A plaintiff must allege sufficient facts to "establish that he was in possession of the

goods, or entitled to possession, at the time of the conversion." *Nat'l Ventures, Inc. v. Water

Glades 300 Condo. Ass'n*, 847 So. 2d 1070, 1073 (Fla. 4th DCA 2003) (quoting W. PAGE

KEETON, ET AL., PROSSER AND KEETON ON TORTS, § 15, at 102–03 (5th ed. 1984)); *see

Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

RCAI argues that Josloff is liable for conversion because he received unauthorized

commissions and bonuses, unilaterally increased his salary, took unauthorized car and

phone allowances, and charged thousands of dollars' worth of personal expenses to RCAI

company credit cards. MSJ at 12–13; Turnbull Decl. ¶¶ 12–25, 30–32. *See generally* (Doc.

144-6); Rodriguez Decl. (Doc. 144-5). This evidence shows conversion, as only Turnbull

had the authority to approve salary increases and bonuses, Turnbull Decl. ¶¶ 10, 12, and

Josloff points to no evidence that Turnbull approved them, *see Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman)*, 450 So. 2d 1157, 1161 (Fla. 3rd DCA 1984); Rodriguez Decl. ¶ 25. And using money for an improper purpose, like Josloff making personal charges on RCAI company credit cards, *see* (Doc. 144-6), constitutes conversion. *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013) ("Withdrawing money from an account and exercising wrongful dominion and control over the money is an act of conversion.") (applying Florida law).

Josloff argues that some of the expenses were "already approved" and insists again that RCAI is bringing these claims to "de-credit" him. Resp. at 15. Josloff does not provide any evidence supporting his assertion that the expenses at issue were previously approved by RCAI, arguing only that the controller was aware of them. *Id.* at 5–6. Even if Josloff provided evidence for his assertions that Turnbull and other RCAI employees ate some of the office treats he purchased with company funds or that some of the purchases were used for RCAI in some capacity, that does not prove that those purchases were approved by the Turnbull. *Id.* And this contention does nothing to rebut the bulk of the other unauthorized payments underlying RCAI's claim, including commissions, bonuses, and salary increases. Therefore, RCAI is entitled to summary judgment on its conversion claim.

### 3. Count IV: Civil Theft

To succeed on a claim for civil theft under Florida law, RCAI must show that Josloff "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [RCAI's] property

10

with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [RCIA] of its right to or a benefit from the property or (b) appropriate the property to [Josloff's] own use or to the use of any person not entitled to the property." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009); *see* § 772.11, Fla. Stat. A claim for civil theft is "conversion plus criminal intent." *World Cellphones Distribs. Corp. v. De Surinaamsche Bank, N.V.*, 357 So. 3d 225, 230 (Fla. 3d DCA 2023) (emphasis omitted) (quoting *Gokalp v. Unsal*, 284 So. 3d 1097, 1099 (Fla. 4th DCA 2019)). The plaintiff must make a demand for return of the property and wait 30 days before bringing a civil theft claim. § 772.11(1), Fla. Stat.

RCAI shows that Josloff went to the controller and directed her to make the various increases to his salary and to pay him bonuses and commissions, despite being admonished not to do so. Turnbull Decl. ¶¶ 10–23; Rodriguez Decl. ¶¶ 23–29. These changes were "unauthorized," according to RCAI, because only Turnbull had the authority to increase Josloff's compensation, yet Josloff went straight to the controller. *Id.* ¶ 10. RCAI demanded that Josloff return the property over 30 days before filing its Amended Complaint, but he did not comply. *See* MSJ at 11 n.1; Turnbull Decl. ¶ 45; (Doc. 144-4). RCAI has shown "felonious intent" through evidence that Josloff was informed of the unauthorized nature of his actions yet continued to unilaterally increase his compensation by going directly to RCAI's controller. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316,

1327 (11th Cir. 2006) (explaining that, under Florida law, "felonious intent" requires "actual knowledge" and affirming summary judgment in defendant's favor on civil theft claim because the plaintiff failed to show that where there was evidence that defendant used its property "with actual knowledge that its use was unauthorized").

Josloff responds that he has "provide[d] material evidence showing these accusations are being used as blatant retaliation and are false and baseless" and are "a product of [Turnbull's] delusion and fantasy." Resp. at 14. Josloff points to no admissible evidence supporting these statements. Nor does Josloff identify a retaliation defense for civil theft. Without presenting any evidence, Josloff fails to establish that there "is a genuine issue of material fact that precludes summary judgment," and RCAI is entitled to summary judgment on its civil theft claim. *Clark*, 929 F.2d at 608.

### 4. Counts V & VI: Fraud & Fraudulent Concealment

Fraudulent concealment in Florida requires that the plaintiff show: "(1) the [defendant] concealed or failed to disclose a material fact; (2) the [defendant] knew or should have known the material fact should be disclosed; (3) the [defendant] knew their concealment of or failure to disclose the material fact would induce the plaintiffs to act; (4) the [defendant] had a duty to disclose the material fact; and (5) the plaintiffs detrimentally relied on the misinformation." *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015) (quoting *Philip Morris USA, Inc. v. Hess*, 95 So. 3d 254, 259 (Fla. 4th DCA 2012)). RCAI describes fraud under Florida law as "identical," so I address them jointly. MSJ at

12

15 (quoting *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1119 (M.D. Fla. 2009)).

RCIA contends that Josloff engaged in fraudulent concealment by failing to disclose "important information to Turnbull," including "information regarding how the corporation's funds were being spent and Josloff's actual or prospective conflicts of interest." MSJ at 15. Even assuming that RCAI's evidence shows that Josloff concealed or failed to disclose a material fact and had an affirmative duty to do so, RCAI fails to offer sufficient evidence about how those acts or omissions induced RCAI to act. And of course, "as a general rule, summary judgment is not appropriate to resolve a fraud claim under Florida law." *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008).

### 5. Count VII: Breach of the Fiduciary Duty of Loyalty

"The elements necessary to state of cause of action for breach of fiduciary duty [in Florida] are: 1) existence of a fiduciary duty; 2) a breach of that duty; and 3) damage proximately caused by that duty." *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. 5th DCA 2022). "Florida courts have recognized that corporate officers and directors owe [] a duty of loyalty [] to the corporation that they serve." *McCoy v. Durden*, 155 So. 3d 399, 403 (Fla. 1st DCA 2014). One with a fiduciary duty "cannot assume positions contrary to the interests of the corporation." *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 644 (Fla. 2d DCA 1958). Nor may he "make a private

profit from his position or, while acting in that capacity, acquire an interest adverse to that of the corporation." *Pruyser v. Johnson*, 185 So. 2d 516, 521 (Fla. 2d DCA 1966).

RCAI shows that Josloff breached his duty of loyalty to the company by engaging in several disloyal acts. As President of RCAI, Josloff had a fiduciary duty of loyalty to the corporation. *McCoy*, 155 So. 3d at 403. By unilaterally increasing various earnings and surreptitiously hiring his wife at the company, Josloff made a "private profit" from his position, thereby breaching his duty of loyalty. *Pruyser*, 185 So. 2d at 521. Similarly, Josloff's destruction of documents without reason and sending himself confidential information just before his termination were actions adverse to the interests of RCAI. *Id.*; Turnbull Decl. ¶¶ 33–34, 40–41. Therefore, RCAI is entitled to summary judgment on its breach of fiduciary duty claim.

RCAI is entitled to summary judgement in its favor on the following claims: conversion, civil theft, and breach of fiduciary duty. As to conversion, RCAI's evidence proves that the damages are $44,590.54, which equals the personal expenses that Josloff charged to his company credit card. Rodriguez Decl. ¶ 22. The damages for the civil theft claim are $438,855.30, which consists of the unauthorized bonuses and commissions, increased salary, car allowances, phone allowances, as well as treble damages under § 772.11, Fla. Stat. MSJ at 12. Damages for the breach of fiduciary duty consist of the amount that RCAI paid for Josloff's wife's employment, $2,077.69, and for the recreation

of the documents that Josloff destroyed, $13,400. MSJ at 14–15. The total amount of

damages for the claims upon which RCAI is entitled to summary judgment is $498,923.53.

### C. Josloff's Counterclaims

#### 1. Count I: Religious Discrimination Under the NJLAD

The NJLAD prohibits unlawful discrimination against individuals in the terms and

conditions of employment because of their religion. N.J. Stat. § 10:5-12. The traditional

burden-shifting analysis from *McDonnell Douglas Corp. v. Green* applies to claims under

NJLAD. 411 U.S. 792 (1973); *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1182

(N.J. Super. Ct. App. Div. 2005). If the plaintiff makes a prima facie case, the employer

must then present "evidence of 'legitimate, non-discriminatory reasons' that support its

employment actions." *El-Sioufi,* 887 A.2d at 1182. Once the employer does so, "the

burden shifts back to plaintiff to prove that the stated reasons were a pretext for

discrimination." *Id.* To show pretext, the plaintiff "must demonstrate such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the defendant's

proffered legitimate reasons for its action that a reasonable factfinder could rationally find

them 'unworthy of credence[.]" *DeWees v. RCN Corp.*, 883 A.2d 387, 396 (N.J. Super.

Ct. App. Div. 2005) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

RCAI is entitled to summary judgment on Josloff's NJLAD claim. Josloff fails to

address his NJLAD claim in his response, as he only mentions the FCRA when addressing

his religious discrimination claim. Resp. at 15–16. But even reading Josloff's response

liberally, he does not point to evidence showing a genuine dispute of material fact.
Assuming Josloff established a prima facie case, Josloff does not point to evidence from
which a reasonable jury could find that RCAI's reasons for terminating him were a pretext
for religious discrimination. RCAI contends it terminated Josloff in response to finding
out that Josloff had put his wife on the company payroll, took unauthorized commissions
and bonuses, and stole confidential information, and then subsequently lied about it. MSJ
at 20; *see* Reply at 2–3.

Josloff asserts he has "material evidence" to prove he "was not lying" to the company.
Resp. at 7. That "material evidence" consists of tax forms listing his wife as a part-time
RCAI employee, a text message by an unidentified person calling Turnbull "crazy," and
Josloff's personal belief that Turnbull was an alcoholic. *Id.* First, the sanction order
precludes use of any of this untimely "evidence." (Doc. 171). Second, much is likely
inadmissible at trial and thus irrelevant for a Rule 56 motion. *McMillian v. Johnson*, 88
F.3d 1573, 1584 (11th Cir. 1996), *aff'd sub nom. McMillian v. Monroe County*, 520 U.S.
781 (1997). Third, the evidence fails to controvert the evidence of dishonesty, RCAI's
purported basis of termination. That his wife earned little from RCAI does not rebut the
allegation that Josloff had her added to payroll with her maiden name. And even if some
disliked or found Turnbull unstable for various reasons, those views do not undermine
RCAI's business reason for terminating Josloff. *Damon v. Fleming Supermarkets Of Fla.,*

*Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer 'may fire an employee for a

good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long

*as its action is not for a discriminatory reason.*' " (emphasis in the original) (quoting *Jones*

*v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998) (per

curiam))). Because Josloff has not produced evidence showing that RCAI's reasons for

terminating him contained "implausibilities, inconsistencies, incoherencies, or

contradictions," RCAI is entitled to summary judgment on the NJLAD claim. *El-Sioufi,*

887 A.2d at 1187 (quoting *DeWees*, 883 A.2d at 396).

### 2.  Count II: Religious Discrimination Under the FCRA

The FCRA prohibits discrimination, or retaliation for claiming discrimination, on

the basis of a protected characteristic. *See* § 760.10–11, Fla. Stat. As a threshold matter,

"an employee must file a complaint with the Florida Commission on Human Relations

[FCHR] or the EEOC within 365 days of the alleged FCRA violation." *Rainey v. United*

*Parcel Serv., Inc.*, 816 F. App'x 397, 401 (11th Cir. 2020) (per curiam). "The presuit filing

of an administrative complaint with the Florida Commission on Human Relations or

EEOC] is a condition precedent that must be pled when filing the civil action." *Orange*

*County v. McLean*, 308 So. 3d 1058, 1062 (Fla. 5th DCA 2020).

Josloff failed to exhaust his administrative remedies by filing a complaint of

discrimination with either the EEOC or FCHR, and therefore summary judgment must

be granted in RCAI's favor on this claim. Josloff does not allege in his counterclaim that

he filed a complaint with the EEOC or FCHR before bringing his counterclaim, *see* Am.

Counterclaim ¶¶ 95–123, and Josloff also does not dispute that he failed to do so in his

response, Resp. at 15–16. Because filing a charge of discrimination with the EEOC or

FCHR is a "condition precedent" to filing suit and Josloff presents no evidence that he did,

summary judgment on this claim is due to be granted in RCAI's favor. *Orange County*,

308 So. 3d at 1062; *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1205 (11th

Cir. 2007) (upholding district court's grant of summary judgment based on failure to

exhaust administrative remedies before filing an FCRA claim).

### 3.  Counts III & IV: Negligent Misrepresentation and Fraud in the Inducement

To establish fraud in Florida, a plaintiff must allege: "(1) a false statement

concerning a material fact; (2) the representor's knowledge that the representation is false;

(3) an intention that the representation induce another to act on it; and, (4) consequent

injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So. 2d

625, 627 (Fla. 1985). Negligent misrepresentation requires that a plaintiff show: "(1) the

defendant made a misrepresentation of material fact that he believed to be true but which

was in fact false; (2) the defendant was negligent in making the statement because he should

have known the representation was false; (3) the defendant intended to induce the plaintiff

to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in

justifiable reliance upon the misrepresentation." *Specialty Marine & Indus. Supplies, Inc.*

18

*v. Venus*, 66 So. 3d 306, 309 (Fla. 1st DCA 2011) (*Simon v. Celebration Co.*, 883 So. 2d

826, 832 (Fla. 5th DCA 2004)).

Josloff's claims sounding in fraud fail because he presents no admissible evidence to

support them, and in particular, how he detrimentally relied upon them. Josloff alleges that

"he was promised by Turnbull that he would receive an employment contract and full

relocation package for himself and his family," Resp. at 16, and that Turnbull made the

promises with "no intention of actually providing" them, Am. Counterclaim ¶ 127; *see id.*

¶¶ 137–51. Though Turnbull admits to informing Josloff he would develop a new

compensation package, Turnbull Decl. ¶ 21, the record contains no facts showing that

Turnbull knew his statements were false or what the compensation package would include.

Most importantly, Josloff offers no admissible evidence to explain how the representations

were material or how he relied upon them to his detriment. Reply at 3–4. Because Josloff

fails to make a sufficient showing as to his fraud claims, RCAI is entitled to summary

judgment. *See Celotex Corp.*, 477 U.S. at 323.

### 4. Count V: Defamation

The elements of a claim for defamation in Florida are: "(1) publication; (2) falsity;

(3) actor must act with knowledge or reckless disregard as to the falsity on a matter

concerning a public official, or at least negligently on a matter concerning a private person;

(4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*,

997 So. 2d 1098, 1106 (Fla. 2008). Under the Florida litigation privilege, "absolute

immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383–84 (Fla. 2007) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)) (applying the litigation privilege to "all causes of action, whether for common-law torts or statutory violations"); *see also Debrincat v. Fischer*, 217 So. 3d 68, 69–70 (Fla. 2017).

Because Josloff's defamation claim appears premised upon RCAI's lawsuit being "false, fraudulent, and defamatory," Am. Counterclaim ¶¶ 152–59, Florida's litigation privilege bars it. Josloff claims that RCAI defamed him because an employee conducted an "audit" after Josloff was terminated and then "in retaliation for Josloff alleging discrimination, [RCIA] filed this false, fraudulent, and defamatory lawsuit." *Id.* ¶¶ 154–55. Josloff alleges "[t]hese statements were false, and [RCIA] knew that they were false[,]" *id.* ¶ 156, but does not explain which statements precisely he alleges were false other than referencing the lawsuit, *id.* To the extent that any of the "defamatory" statements were not connected to the lawsuit, Josloff neither identifies what those statements are nor points to any evidence in the record supporting his claim, including the requisite special damages for defamation. *Id.* ¶¶ 152–59; *see Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 497 (Fla. 1953); *Lowery v. McBee*, 322 So. 3d 110, 114 & n.2 (Fla. 4th DCA 2021). Because

Josloff, as the nonmovant, has failed to point to any evidence showing a genuine issue of material fact, RCAI is entitled to summary judgment on Josloff's defamation claim. *See Clark*, 929 F.2d at 608.[1]

## IV.   CONCLUSION

Accordingly, the following is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 144) as to its claims is **GRANTED as to Counts III, IV, VII, and VII, and DENIED as to Counts I, II, V & VI.**

2. Plaintiff's Motion for Summary Judgment (Doc. 144) as to Defendant's counterclaims is **GRANTED.**

3. The parties are directed to file an amended case management report no later than **April 7, 2025.**

**ORDERED** in Tampa, Florida, on March 31, 2025.

Kathryn Kimball Mizelle
United States District Judge

---

[1] For the first time in this action, Josloff mentions in his response allegations of "blacklisting" and breach of fiduciary duty against RCAI. Resp. 16–17. Josloff may not bring new claims in response to a motion for summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).